**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| RIDGID, INC., and | ) | |
| | ) | |
| EMERSON ELECTRIC CO., | ) | |
| | ) | |
| *Plaintiffs*, | ) | CIVIL ACTION NO. _____ |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| SOURCEONE PLUS, INC., | ) | **JURY TRIAL DEMANDED** |
| d/b/a SOP GREEN KLEAN, | ) | |
| d/b/a GK VAC BAGS, | ) | |
| | ) | |
| | ) | |
| *Defendant.* | ) | |

## <u>COMPLAINT</u>

Plaintiffs RIDGID, INC. and EMERSON ELECTRIC CO. ("EMERSON ELECTRIC"), by and through its undersigned attorneys, file this Complaint against defendant SOURCEONE PLUS, INC., d/b/a SOP GREEN KLEAN, and d/b/a GK VAC BAGS, alleging as follows:

### I. <u>THE PARTIES</u>

1.      Plaintiff RIDGID, Inc. ("RIDGID") is a subsidiary of Ridge Tool Company, and is organized under the laws of the State of Delaware.

2.      Plaintiff Emerson Electric Co. ("EMERSON ELECTRIC") is the ultimate parent of both RIDGID and Ridge Tool Company, and is organized under the laws of Missouri and has its principal place of business at 8000 West Florissant Avenue, St. Louis, MO 63136-8506.

3.      Upon information and belief, defendant SourceOne Plus, Inc. ("SOURCEONE") is organized under the laws of Illinois and has its principal place of business at 796 Tek Drive, Suite 300, Crystal Lake, IL 60014.

## II. <u>JURISDICTION AND VENUE</u>

5.      This is an action for trademark infringement, unfair competition, dilution, and counterfeiting under the Trademark Act of 1946, as amended, 15 U.S.C. §§ 1114, 1116, 1117, and 1125(a) & (c).  This also is an action for unfair competition and dilution under Illinois law.

6.      This Court has jurisdiction pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338.  This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiffs' state law claims because those claims are so related to the federal claims that they form part of the same case and controversy.   In addition, jurisdiction over all claims is proper under 28 U.S.C. § 1332 because there is a complete diversity of citizenship between the Plaintiffs and the Defendant.

7.      This Court has personal jurisdiction over the Defendant in that, upon information and belief, they do business in the State of Illinois and this judicial district.

8.      Venue is proper before this Court pursuant to 28 U.S.C. §§ 1391(b), (c) and 28 U.S.C. § 1400(b), at least because a substantial part of the property that is the subject of the action is situated in this judicial district.


## III. <u>ALLEGATIONS FOR ALL CLAIMS OF RELIEF</u>

A.      <u>Plaintiffs' Business and their Marks</u>.

9.      Plaintiff RIDGID, Inc. is the owner of all rights as to the RIDGID® trademark and associated registrations.

10.      For decades, and since at least as early as 1923, the RIDGID® Marks have been used consistently on and in connection with a variety of tools in word form and in stylized form, two examples of which are depicted below:



11.     Plaintiff RIDGID and its affiliates have invested tremendous time, energy, and money promoting the RIDGID® Marks and the goods sold thereunder.  Because of these efforts and of the high quality of RIDGID® products, the RIDGID® Marks have acquired an excellent reputation in the marketplace as an identifier and symbol of Plaintiff RIDGID's high quality products and goodwill.

12.     Plaintiff RIDGID and its affiliates continue to invest substantial sums in promoting the products offered under the RIDGID® Marks.

13.     Plaintiff EMERSON ELECTRIC is a manufacturer and seller of a wide variety of vacuum appliances and other vacuum accessories, such as vacuum hoses, hose extension wands, brushes, floor tools, squeegees, and vacuum filter equipment and accessories, particularly replacement filters for both wet/dry and dry vacuum appliances.

14.     At all times relevant to this action, plaintiff EMERSON ELECTRIC has been licensed or otherwise authorized to use the RIDGID® Marks on the goods identified in the associated registrations.

15.     Plaintiff EMERSON ELECTRIC manufactures, among other products, vacuum cleaners and vacuum cleaner accessories, including wet/dry vacuum cleaners and filters for such vacuum cleaners.   Plaintiff EMERSON ELECTRIC is an industry leader in the manufacture, sale and distribution of wet/dry vacuum cleaners and filters for such vacuums for use in homes, offices, workshops, and on the work site, as well as other applications, wherein a user may desire to have a dependable wet/dry vacuum cleaner for cleaning up both solid and liquid debris from a surface.  Since at least as early as 1980, Plaintiff EMERSON ELECTRIC

has used the distinctive RIDGID® Marks, as well as a distinctive color scheme for its vacuum products, including white lettering with an orange bar underneath (the "RIDGID Trade Dress"). An image of an EMERSON ELECTRIC vacuum appliance and an associated filter, both bearing the RIDGID® Marks and RIDGID Trade Dress, are set forth below:

 

16.     EMERSON ELECTRIC has had tremendous sales success for over 10 years with its RIDGID® brand of vacuum cleaners, vacuum cleaner accessories and tools, and vacuum filters. Currently, plaintiff EMERSON ELECTRIC offers over 30 vacuum tools, vacuums (both wet/dry vacuum appliances and dry vacuum appliances) and vacuum filters for sale under the RIDGID® Marks, and RIDGID® is the number one brand of wet/dry vacuum tools worldwide. Plaintiff EMERSON ELECTRIC continues to extensively advertise and promote its products under the RIDGID® Marks.

17.     Plaintiff EMERSON ELECTRIC has extensively promoted its vacuum cleaners, as well as the filters therefor, bearing the RIDGID® Marks, and today sells one of the world's most popular and recognizable wet/dry vacuum cleaners. Since 1998, Plaintiff EMERSON ELECTRIC has spent well over $10 million on advertising and promoting its various products under the RIDGID Trade Dress and RIDGID® Marks.

18.     As a result of such efforts and acceptance by the public, the RIDGID Trade Dress and RIDGID® Marks are recognized as identifying and distinguishing the quality products offered by Plaintiff EMERSON ELECTRIC, and Plaintiff EMERSON ELECTRIC has developed considerable goodwill throughout the United States.  The RIDGID Trade Dress and RIDGID® Marks are highly distinctive designators and have become famous.  The RIDGID Trade Dress and RIDGID® Marks and the goodwill associated therewith are valuable assets of Plaintiffs.

B.     **The Registration of the RIDGID® Marks**.

19.     In accordance with the provisions of the Lanham Act, RIDGID has registered and is the owner of record of several registrations on the Principal Register of the United States Patent and Trademark Office for the RIDGID® trademark for use with plumbing, pipe-working, and wet/dry vacuum cleaners, including but not limited to (emphasis added):

| MARK | REG. NO. | ISSUE DATE | GOODS INCLUDE |
|---|---|---|---|
| RIDGID | 3,361,365 | January 1, 2008 | Power tools, namely, power-operated saws; electric core drills; electric motors for machines and replacement parts therefor; power tools, namely, drill presses and drills, and drill bits therefor; electric drills and cordless electric drills; electric generators; power tools, namely, jointers, reamers, planers, lathes, grinders, sanders, routers, and replacements therefor; gas-operated soldering irons; power-operated sewer and drain cleaning machines and replacement parts therefor; machines, namely, automatic cable feeders; pipe bending machines; pipe threading machines; power tools, namely, automatic pipe cutters; core drilling machines and replacement parts therefor; power operated copper |

| MARK | REG. NO. | ISSUE DATE | GOODS INCLUDE |
|---|---|---|---|
| | | | cutting prep machines; electric pumps for use in testing pressure; power operated tapping machines; pipe roll grooving machines and support stands therefor; grooving machines; circular saws; pipe and bolt threading machines; pipe and rod rotating machines; torch kits for soldering and brazing comprised of gas-operated soldering irons and replacements parts therefor; power-operated industrial machine presses; hydraulic roll grooving machines; air filters for mechanical purposes; hydraulic presses; *vacuum cleaners and vacuum cleaner accessories, namely, vacuum cleaner filters, bags, hoses and replacement parts for vacuum cleaners*; power-operated pressing and crimping tools used for securing connections on pipes and tubing, and parts therefor; cleaning and clearing water jetters, namely, water jets for removing materials from all types of drains and parts therefor. |
| **RIDGID** | 2,420,497 | January 16, 2001 | Power tools [and electric motors therefor], namely, saws, compressors, drill presses, drills, electric generators, jointers, planers, lathes, grinders, sanders, routers, and replacement parts therefor; * electric motors being component parts of power tools; * *vacuum cleaners and replacement parts therefore.* |
| **RIDGID** | 2,420,485 | January 16, 2001 | Power tools and electric motors therefor, namely, saws, compressors, drill presses, drills, electric generators, jointers, planers, [lathes,] grinders, sanders, routers, and replacement parts therefor; *vacuum cleaners and replacement parts therefore.* |

20.     Each of the above-listed registrations (herein, the "RIDGID® Marks") is valid and subsisting, and has become incontestable pursuant to 15 U.S.C. § 1115(b).  Each of the above-listed registrations is, therefore, conclusive evidence of: the validity of the registered mark and of the registration for the mark, RIDGID's ownership of the mark, and RIDGID's exclusive right to use and to license use of the registered mark in commerce.

21.     The RIDGID® Marks qualify as famous marks, as that term is used in 15 U.S.C. § 1125(c)(1).

22.     As a result of Plaintiffs' sustained, substantial and successful promotion and sales of high-quality products under the RIDGID® Marks, as well as the distinctiveness of the RIDGID® Marks, the RIDGID® Marks long ago became widely recognized.  The RIDGID® Marks have come to signify high quality products sourced from and authorized by Plaintiffs, and have acquired strong secondary meaning.  This consumer association developed long before any of the Defendants began using, reproducing, and infringing upon the RIDGID® Marks.

23.     The RIDGID® Marks are inherently distinctive as to vacuum cleaners and their associated accessories.

24.     The RIDGID® Marks are not only distinctive and strong, but are now famous for vacuum cleaners, vacuum cleaner accessories and tools, and filters for vacuum cleaners.


C.     **Defendant's Willful and Unauthorized Acts and Omissions**.

25.     At all times relevant to this action, and pursuant to 15 U.S.C. § 1072, defendant SOURCEONE had, at a minimum, constructive notice of plaintiff RIDGID's ownership of, and plaintiff EMERSON Electric's rights in, the RIDGID® Marks.

26.     In addition to its unauthorized use of the RIDGID® Marks on several of its products, defendant SOURCEONE promotes and sells its filter products at least through Internet web sites, including web sites with the following addresses:  <www.gkvacbags.com>, <www.totalvac.com> and <www.cleanitsupply.com>.

27.     On each of these websites, defendant SOURCEONE has used and continues to use and prominently display replicas of RIDGID's Trade Dress and the RIDGID® Marks without authorization or right, in a manner that implies a connection with or approval from Plaintiffs, where none exists.

28.     For example, as shown in the screen capture taken from the web page http://www.gkvacbags.com/filters/ridgid/, and reproduced below, defendant SOURCEONE makes unauthorized use of RIDGID Trade Dress and the RIDGID® Marks, including but not limited to the marks of U.S. Trademark Registration Nos.: 3,361,365; 2,420,497; 2,420,485; and 1,612,097.



32.     Defendant's unauthorized and improper use of the RIDGID® Marks is likely to create a strong impression or conclusion among customers and potential customers that:

a.      Defendant is authorized to use the RIDGID® Marks;

b.      Defendant is somehow affiliated with or sponsored by RIDGID and/or EMERSON ELECTRIC;

c.      Defendant is an authorized distributor of RIDGID® products;

d.      Defendant has authorized access to EMERSON ELECTRIC's manufacturing schematics and tolerances for RIDGID® products, particularly replacement filter products;

e.      EMERSON ELECTRIC directly supplies Defendant with RIDGID® products; and/or

f.      EMERSON ELECTRIC's product warranty and/or certifications apply to products sold by Defendant under the RIDGID® Marks.

33.     Defendant's unauthorized and improper use of the RIDGID® Marks and RIDGID Trade Dress creates a likelihood of confusion, mistake, and deception among customers and potential customers concerning the relationship among the Defendant and RIDGID and/or EMERSON ELECTRIC, including but not limited to, whether RIDGID and/or EMERSON ELECTRIC sponsors Defendant, or is affiliated with the Defendant.

34.     The Defendant's unauthorized and improper use of the RIDGID® Marks dilutes the distinctive quality of the RIDGID® Marks, and decreases the capacity of the RIDGID® Marks to identify and distinguish Plaintiffs' products from other's products.

35.     The Defendant's unauthorized and improper use of the RIDGID® Marks constitutes a false designation of origin, false or misleading description of fact and/or false or misleading representation of fact.

36.     The acts and omissions by the Defendant detailed herein preclude Plaintiffs from controlling the nature and quality of vacuum cleaner filters and filter products provided under the

RIDGID® Marks—which products consumers associate exclusively with EMERSON ELECTRIC—and thereby places the valuable reputation and good will of Plaintiffs in the hands of the Defendant, an entity with whom neither RIDGID nor EMERSON ELECTRIC has a relationship, and over whom Plaintiffs have no control.

37.    The Defendant's unauthorized and improper use of the RIDGID® Marks has been and continues to be willful and intentional, and designed to trade upon the enormous good will created in those Marks by Plaintiffs.  Further investigation and discovery will likely uncover additional evidentiary support for these allegations.

**D**.    **Irreparable Injury to Plaintiffs**.

38.    The Defendant's use of the RIDGID® Marks and the RIDGID Trade Dress allows for and will allow the Defendant to receive the benefit of the goodwill built up at great labor and expense by Plaintiffs in its RIDGID® Marks and RIDGID Trade Dress, and further allows the Defendant to gain acceptance for their goods and services based not on their own merit, but on an association with the reputation and goodwill of Plaintiffs.

39.    The Defendant's use of the RIDGID® Marks and the RIDGID Trade Dress constitutes an invasion of Plaintiffs' valuable property rights in a manner that unjustly enriches the Defendant.

40.    The Defendant's use of the RIDGID® Marks and the RIDGID Trade Dress is likely to cause confusion with the use by Plaintiffs of their marks for the same goods and services and in the same channels of trade, and falsely indicates to the purchasing public that the Defendant and/or their services are in some manner connected with, sponsored by, affiliated with, or related to Plaintiffs.

41.    Use by the Defendant of the RIDGID® Marks and the RIDGID Trade Dress places the valuable reputation and goodwill of Plaintiffs in the hands of the Defendant, over whom Plaintiffs have no control.

42. Unless these acts of the Defendant are restrained by this Court, they will continue, and will result in irreparable injury to the Plaintiffs and to the public, for which there is no adequate remedy at law.

43. Defendant's acts complained of herein have caused damage to Plaintiffs in an amount to be determined at trial, and such damage will continue to increase unless the Defendant is enjoined from their wrongful actions and infringements.


## COUNT I

### *Trademark Infringement of Registered Marks Under 15 U.S.C. § 1114*

44. RIDGID and EMERSON ELECTRIC hereby incorporate by reference and reallege all of the allegations in the preceding paragraphs as if fully set forth herein.

45. The actions of the Defendant referenced above constitute trademark infringement of the registered RIDGID® Marks under 15 U.S.C. § 1114(1).

## COUNT II.

### *Federal Trademark Dilution Under 15 U.S.C. § 1125(c)*

46. RIDGID and EMERSON ELECTRIC hereby incorporate by reference and reallege all of the allegations in the preceding paragraphs as if fully set forth herein.

47. The actions of the Defendant described above are likely to dilute the distinctive quality of the RIDGID® Marks.

48. The actions of the Defendant complained of above constitute federal trademark dilution under 15 U.S.C. § 1125(c).


## COUNT III

### *Federal Unfair Competition Under 15 U.S.C. § 1125(a)*

49. RIDGID and EMERSON ELECTRIC hereby incorporate by reference and reallege all of the allegations in the preceding paragraphs as if fully set forth herein.

50.     The actions of the Defendant complained of above constitute unfair competition in violation of the terms of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

### COUNT IV

### *Federal Trademark Counterfeiting*

51.     RIDGID and EMERSON ELECTRIC hereby incorporate by reference and reallege all of the allegations in the preceding paragraphs as if fully set forth herein.

52.     The Defendant has used, and is using, the RIDGID® Marks in interstate commerce in connection with the Defendant's inferior counterfeit RIDGID® product in such a fashion and design as to imitate, counterfeit, copy, and reproduce Plaintiffs' RIDGID® Marks and goods.

53.     The Defendant's acts as alleged above were with the purpose of exploiting and trading on the substantial goodwill and reputation of Plaintiffs as symbolized by the RIDGID® Marks. Such intentional acts on the part of The Defendant have damaged Plaintiffs' goodwill as symbolized by the RIDGID® Marks, causing Plaintiffs immediate and irreparable damage.

54.     Defendant's acts as alleged above likely have caused confusion, mistake, and deception, and are likely to continue to cause confusion, mistake, and deception, and have infringed upon Plaintiffs' exclusive rights in their trademarks.

55.     The Defendant had actual knowledge of Plaintiffs' exclusive rights in the RIDGID® Marks and willfully and deliberately infringed Plaintiffs' rights in the RIDGID® Marks.

56.     Plaintiffs' valuable reputation and goodwill in its trademarks have been tarnished and damaged and will continue to suffer harm, including irreparable harm.  The Defendant has also been unjustly enriched by their actions as alleged above.

57.     Such acts by the Defendant constitute trademark infringement and counterfeiting, in violation of Section 32 of the Lanham Act, 15 U.S.C. §1114(1)(a), *inter alia*.

58.     The Defendant's unauthorized use of the RIDGID® Marks and of counterfeit RIDGID® logos in connection with the sale and distribution of vacuum cleaner filters and

products is use of a "counterfeit mark" as that term is defined in Section 32(d)(1)(B) of the Lanham Act, 15 U.S.C. § 1116(d)(1)(B).

## COUNT V

### *Illinois Trademark Infringement Under 765 ILCS 1036/60*

59.     RIDGID and EMERSON ELECTRIC hereby incorporate by reference and reallege all of the allegations in the preceding paragraphs as if fully set forth herein.

60.     The Defendant has reproduced, copied, or colorably imitated a trademark and applied it to labels, signs, prints, and other writings intended to be used in conjunction with the distribution of goods or services in violation of the Illinois Trademark Registration and Protection Act, 765 ILCS 1036/60.

61.     The Defendant knowingly acted with the intent to cause confusion between its products and EMERSON ELECTRIC's products.

62.     By reason of its acts and omissions, the Defendant has made and will continue to make substantial profits and gains to which they are not entitled.

63.     By reason of the Defendant's acts and omissions, RIDGID and EMERSON ELECTRIC have been and will continue to be irreparably harmed and damaged unless such acts and omissions are enjoined by this Court.

64.     RIDGID and EMERSON ELECTRIC have no adequate remedy at law.

## COUNT VI

### *Violation of the Illinois Deceptive Trade Practices Act*

65.     RIDGID and EMERSON ELECTRIC hereby incorporate by reference and reallege all of the allegations in the preceding paragraphs as if fully set forth herein.

66.     The Defendant's acts and omissions set forth above constitute deceptive trade practices, in violation of the Illinois Deceptive Trade Practices Act, 815 ILCS 510/1 to /7 .

67.    By reason of its acts and omissions, the Defendant has made and will continue to make substantial profits and gains to which it is not entitled.

68.    By reason of the Defendant's acts and omissions, RIDGID and EMERSON ELECTRIC have been and will continue to be irreparably harmed and damaged unless such acts and omissions are enjoined by this Court.

69.    RIDGID and EMERSON ELECTRIC have no adequate remedy at law.


## COUNT VII

### *Illinois Common Law*

70.    RIDGID and EMERSON ELECTRIC hereby incorporate by reference and reallege all of the allegations in the preceding paragraphs as if fully set forth herein.

71.    The RIDGID® Marks are strong and distinctive trademarks that have been in use for many years and have achieved enormous and widespread public recognition.

72.    Through prominent, long and continuous use in commerce, including commerce within the State of Illinois, the RIDGID® Marks have become and continue to be famous and distinctive.

73.    Defendant's use of the RIDGID® Marks on its products, without authorization, is designed to deceive and mislead customers and to cause confusion as to the originator of the products.

74.    Defendant's unauthorized use of the RIDGID® Marks has diluted and is diluting the distinctive quality of the RIDGID® Marks; has decreased and is decreasing the capacity of such marks to identify and distinguish RIDGID and/or EMERSON ELECTRIC products; and has caused and is causing a likelihood of harm to RIDGID's and/or EMERSON ELECTRIC's business reputation in violation of Illinois common law.

75.     By reason of the Defendant's acts and omissions, RIDGID, and/or EMERSON ELECTRIC have been and will be irreparably harmed and damaged unless such acts and omissions are enjoined by this court.

76.     RIDGID's and/or EMERSON ELECTRIC's remedies at law are inadequate.


## COUNT VIII

### *Unjust Enrichment*

77.     RIDGID and EMERSON ELECTRIC hereby incorporate by reference and reallege all of the allegations in the preceding paragraphs as if fully set forth herein.

78.     The acts and omissions alleged herein constitute unjust enrichment of the Defendant at the expense of RIDGID and/or EMERSON ELECTRIC, in violation of Illinois Common Law.


## IV.

### JURY DEMAND

79.     Plaintiffs hereby request a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.


## V. PRAYER FOR RELIEF

80.     Plaintiffs request that the Court enter judgment in its favor against the Defendant, and that the Court grant Plaintiffs the following relief:

1.      Defendants, their corporate officers, directors, agents, employees, subsidiaries, parent corporations, affiliates, attorneys, privies, successors and assigns, and all those acting in concert or participation with them, be preliminarily and permanently enjoined and restrained from:

a.      using any form of the RIDGID® Marks in any advertising or promotion material in any medium for any product it sells, or on packaging for products it sells, that is not manufactured and sold by Ridge Tool under the RIDGID® Marks;

b.      using the phrase "replacement for Ridgid® Style Filter" to describe Defendants' replacement parts for Ridge Tool Products; and

c.      committing any other acts or making any oral, written, or electronic statements calculated, or the reasonably foreseeable consequence of which would be, to infringe or dilute the RIDGID® Marks, or to confuse, mislead, or deceive consumers of vacuum cleaner filters concerning the RIDGID® Marks.

2.      The Defendant, their corporate officers, directors, agents, employees, subsidiaries, parent corporations, affiliates, attorneys, privies, successors and assigns, and all those acting in concert or participation with them, be preliminarily and permanently enjoined and ordered to:

a.      modify each of its websites and all forms of advertising to provide accurate and prominent attribution of the RIDGID® Marks anytime that the Marks are used for identification of a product manufactured by Plaintiffs, such attribution stating that

"RIDGID® is a trademark of RIDGID, INC. and is used for product identification purposes only";

b.      prominently identify the manufacturer's brand for products not manufactured by Ridge Tool anytime the RIDGID® Marks is legitimately used for product identification purposes;

c.      prominently state that

"[Defendant] is not an authorized distributor of RIDGID® or products"

anytime the RIDGID® Marks is legitimately used for product identification purposes;

d.      prominently state that

"Replacement parts are designed and manufactured by Defendant.  Defendant is not affiliated with, and the replacement part is not approved or warranted by RIDGID, Inc. or Emerson Electric Co."

any time the RIDGID® Marks is legitimately used for product identification purposes for replacement parts;

e.      prominently state that

> "This product has been reconditioned by Defendant. No RIDGID, Inc. or Emerson Electric Co. warranty applies to this reconditioned product. The original manufacturer's certifications no longer apply to this reconditioned product"

any time the RIDGID® Marks is legitimately used for product identification purposes for recondition products.

All such legends and attributions shall be in a font and style at least as prominent as the front and style of the RIDGID® Marks used for product identification purposes.

3.      The Defendant, their officers, agents, servants, employees, attorneys, successors, assigns, related companies, and all those acting in concert with any of them, immediately be required to deliver up to the Court for impoundment and/or destruction, or to show proof of destruction of, any and all products, displays, signs, circulars, promotional materials, advertisements, packaging and any other materials in their possession, custody, or control that improperly bear or display any of the RIDGID® Marks, or any other mark or designation confusingly similar to any of such marks or trade dress;

4.      The Defendant be ordered to file with this Court and to serve upon Plaintiffs, within thirty (30) days after the entry and service of an injunction, a report in writing and under oath setting forth in detail the manner and form in which the Defendant has complied with the injunction;

5.      An accounting be ordered to determine the Defendant's profits resulting from its infringement and unfair competition, and that such profits be increased at least three times and be paid over to Plaintiffs pursuant to 15 U.S.C. § 1117(a) and (b);

6.      Plaintiffs be awarded their actual damages resulting from the Defendants infringement and that, pursuant to 15 U.S.C. § 1117(a) and (b), the amount of such damages be trebled;

7.      Plaintiffs recover their reasonable attorney fees under 15 U.S.C. § 1117(a) because this is an exceptional case, or under 15 U.S.C. § 1117(b) in light of the Defendants use of a counterfeit mark;

17

8.      In the alternative, and at Plaintiffs' election before final judgment, pursuant to 15 U.S.C. § 1117(c), Plaintiffs be awarded statutory damages of up to two million dollars ($2,000,000.00) per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just;

9.      Plaintiffs are awarded compensatory damages in the amount found by the jury;

10.     Plaintiffs are awarded their costs and attorney fees pursuant to Illinois law;

11.     Plaintiffs are awarded prejudgment interest; and

12.     Plaintiffs are granted such other and further relief as the Court deems just and proper.

Date:  November 8, 2011                     Respectfully submitted,


                                            By:     /s/Kevin M. Nelson


                                            Kevin M. Nelson
                                            Locke Lord LLP
                                            115 South LaSalle Street
                                            Suite 4100
                                            Chicago, Illinois  60606
                                            (312) 443-1890 (telephone)
                                            (312) 896-6674 (fax)
                                            knelson@lockelord.com


                                            Albert B. Deaver, Jr.
                                            TX State Bar No. 05703800
                                            LOCKE LORD LLP
                                            600 Travis Street, Suite 2800
                                            Houston, Texas 77002
                                            (713) 226-1200 (telephone)
                                            (713) 223-3717 (facsimile)
                                            adeaver@lockelord.com

                                            Attorneys for Ridgid, Inc. and Emerson Electric
                                                Co.